Smith *v.* Old Colony and Newport Railroad Company.

It may be remarked that the transfer to Margaretta L. Cartright was made while the claim was still due from Northam, and that the attachment was made after the payment to the garnishees as attorneys of Cartright & Co. We think, however, that this could not affect the preference acquired by the said Margaretta under the assignment, so long as the garnishees had notice thereof in season to avail themselves of it. After such notice it would be their duty to hold the amount collected, subject to any lien or claim which they might have thereon, for the said Margaretta, and not for the defendants.

We therefore dismiss the action for want of any sufficient service of the writ.                         *Action dismissed.*

*Sheffield & Payne*, for plaintiff.

*F. B. Peckham, Jr.*, for defendants.

---

## SAMUEL SMITH *vs.* OLD COLONY AND NEWPORT RAILROAD COMPANY.

A railroad company is only required, to use reasonable or ordinary care, such as prudent men, skilled in the business, would ordinarily use in the particular case in question, to protect property on the line of their road from damage by reason of sparks escaping from their locomotives.

In an action against a railroad company for burning the plaintiff's property by sparks from their locomotive, evidence that fires on the line of the road have originated from sparks escaping from defendants' locomotives, before the occurrence of the one in question, is admissible to enable the jury to judge whether the defendants, in view of the previous occurrence of such fires, exercised reasonable care at the time this one happened; but evidence of fires occurring from this cause subsequently to the one in question is inadmissible, unless the possibility of communicating fire by sparks from a locomotive is disputed by the defendants, in which case it is admissible solely for the purpose of proving such possibility.

S. alleged in his declaration against a railroad company that the defendants, while using their locomotive engine and other rolling stock on their road, so carelessly and negligently managed the same that his cotton mill was set on fire by sparks from said locomotive engine. *Held*, that the injury complained of, although, if caused by careless management at all, it was caused by the careless management, not of the engine, but of the fire in the engine, was stated with sufficient accuracy in the declaration, the management of an engine consisting in part of the management of the fire which generates the motive force thereof.

TRESPASS on the case, to recover damages for burning the plaintiff's factory, machinery, &c., through the careless management of the defendants' locomotive engine.

At the trial of the case at the September Term, 1869, of the

Supreme Court for this county, before Mr. Justice Potter and a jury, the plaintiff called one Edward Barker as a witness, and in the course of his examination asked him if he had seen sparks, and if so, how often and to what extent, emitted from the defendants' engines on days prior to the day of the fire; and also if there was any difference between the different engines of the company (defendants) in the noise of puffing and blowing which they habitually made. To these questions the defendants objected, on the ground that the plaintiff could not lawfully show the quantity of sparks emitted from the engines upon other days than that of the fire in question, or from other engines than that one which the plaintiff claimed had set the fire, and that he could not lawfully show, upon this declaration, any defects in the defendants' engines, but the court overruled the objection.

The plaintiff also called one William Jouvet, and in the course of his examination asked him if he had seen sparks and cinders come from the defendants' engines on days preceding that of the fire, or since, and if so how often, and to what degree or extent; and also if his building had been set on fire by the engines. To these questions the defendants also objected, but the court overruled the objection.

The defendants asked the court to charge the jury, that the grant of the defendants' charter for a railroad implied the right in them as grantees to use the road in the ordinary way, provided they operated with the ordinary means and care. That as the defendants had thereby been duly authorized to build and operate a railroad between Newport and Fall River, with locomotives, &c., they were not liable for damages resulting from the lawful use of their locomotives, or the power by which they were operated, so long as their locomotives and their mode of operation was of the usual and ordinary kind, and used and employed with ordinary care and skill. That the use of engines and their motive power upon said road in Newport, and the operation of the railroad there, in the same way that the same were generally used and operated in other places, similarly situated, was the exercise of ordinary care, and that for the damages resulting from such use, and under such circumstances, the defendants were not liable.

But the court refused this request, and charged as follows:—

" It does not follow that the defendants are necessarily liable because they burnt the mill ; but the question is, was the burning an unavoidable accident. It is not enough for the defendants to show that they managed in the way they managed in other towns and villages. It is not enough for the defendants to show that they used the same care and skill used by other railroad companies in managing their engines in other places similarly situated. It is not enough to show that they used ordinary locomotives in good order, with all the improvements. If, with all the improvements, their engines emitted sparks, so much the more need for care. If sparks were more liable to blow on starting, they were bound to use so much the more care. If the neighborhood was of wooden buildings, they should use more care. If the buildings were old, they should use more care ; and so if it was a windy day, or if it was a dry time. They were bound to stop the sparks if they could, and if they could not, they were bound to keep a watch to prevent injury from the sparks, if that was necessary to prevent damage, and whether this was necessary was for the jury to decide. If the fire was caused from some breakage or inevitable accident, then the company would not be liable. But in that case if the accident had happened before, and they had been warned against it, they should have taken the utmost care to prevent it. It was said by some of the witnesses that this engine threw out more sparks than the others. If this was so the defendants should have watched it the more (used so much care as was necessary to prevent injury), but if damages resulted from an inevitable accident the defendants were not liable. The running an engine is a lawful business, but they must be run with such care as to prevent damages. So it is lawful to use gunpowder, but those who use it must take care that it does no injury to others."

The defendants further asked the court to charge the jury, that the plaintiff's proof did not sustain the allegations of his declaration, because the allegations were that the damages resulted from the negligent management of defendants' engine ; while at most the proof tended to show that they resulted from the use or management of the fire in the engine. Upon this point the court charged that the jury must be satisfied that the burning of the mill resulted from and was caused by the lack of care of defendants in use of their engines ; that it was solely a

question for the jury whether, under all the circumstances proven, the defendants used proper care in the management of their engines and fires to prevent the damage to plaintiff's property.

The jury having returned a verdict for the plaintiff for $14,-500.00, the defendants now moved for a new trial, upon the grounds (with others not considered by the court in their decision) of error in the admission of the above stated testimony and in the aforesaid instructions.

*Sheffield & F. B. Peckham, Jr.*, for the defendants, in support of the motion, cited, to the point that the testimony of the witnesses was improperly admitted, 1 Greenl. Ev. § 54, n. 4, and citations. They submitted that the proof showing that it is fires that burn and destroy, and not locomotives, did not sustain the allegation in the declaration that the fire and burning was occasioned by negligence in the use of the locomotives; and also that the charge as requested respecting the liability of the defendants for negligence should have been given, because a railroad company authorized by its charter to use steam-power has necessarily the right to use fire as a means of generating steam, and is not liable for injuries unavoidably produced by keeping fire for such a purpose. One who seeks to recover on account of injuries caused by sparks escaping from the locomotive, the use of which is authorized by law, must prove negligence apart from injury, and will fail if the defendant shows that its servants adopted every known reasonable precaution against such accidents. *Huyett* v. *Reading R. R. Co.* 23 Pa. State, 373; *Sheldon* v. *Hudson River R. R. Co.* 23 Barb. 226; *Macon, &c. R. R. Co.* v. *McConnoll*, 29 Geo. 481; *McCreedy* v. *S. C. R. R. Co.* 2 Strob. 356; *Rood* v. *Erie R. R. Co.* 18 Barb. 80; *Vaughn* v. *Taff Vale R'y. Co.* 5 H. & N. 679; *Reading R. R.* v. *Yeiser*, 8 Pa. State, 366; *Burroughs* v. *Housatonic R. R. Co.* 15 Conn. 124; *Sheldon* v. *Hudson R. R. R.* 14 N. Y. 218; *Baltimore & O. R. R. Co.* v. *Woodruff*, 4 Md. 242.

*Brown & Gilpin*, for the plaintiff, *contra*, cited *Piggott* v. *Eastern Counties R. R.* 3 M., G. & S. 229; *Cook* v. *Champlain Transportation Co.* 1 Denio, 91; *Hinds* v. *Boston*, 25 N. Y. 544; *Sheldon* v. *Hudson River R. R. Co.* 4 Kernan, 218; *Holbrook & wife* v. *Utica & Schenectady R. R. Co.* 2 Kernan, 236; *Aldrich* v. *The Great Western Railway Co.* 3 M. & G. 515.

DURFEE J. We consider it to be settled that a railroad company is only required to use reasonable or ordinary care, to protect property on the line of their road from damage by reason of sparks escaping from their locomotives; and that reasonable care is such care as prudent men, skilled in the business, would ordinarily exercise in the circumstances. Of course, reasonable care, as thus defined, is not a stationary degree of care, but a rule which graduates itself to suit the varying circumstances under which the exercise of care is called for, the requirement being always that the care shall be proportionate to the danger. Thus, what would be reasonable care, with the property contiguous to the road covered with snow or saturated with heavy rains, would fall far short of being reasonable care in a season of protracted heat and drought. In the one case, there would probably be need of very little care beyond the furnishing of the locomotives with proper spark-catchers; while in the other the utmost caution and vigilance would amount simply to the degree of care which prudent men, skilled in the business, would ordinarily use in the same circumstances. Whether in any particular case of fire communicated from a locomotive, the care used by the railroad company was, under the circumstances, reasonable care, is a question of fact, to be determined by the jury, the rule as to reasonable care being explained to them by the court.

In the case at bar, we do not think the charge to the jury was such as would properly instruct them in their duties. The judge who gave the charge directed the jury that, in order to find for the plaintiff, they should be satisfied that the fire resulted from the want of proper care on the part of the defendant corporation; but when he proceeded to define more specifically the kind of care which was to be exacted of the company as " proper care," he used language which allowed the jury too little latitude. In fact, we think the language used was such as would naturally have led the jury to suppose that the railroad company was responsible unless the fire was the result of an inevitable accident. At the very least, the jury could hardly have inferred, from the language and illustration employed, that anything less than the utmost care and vigilance could satisfy the requirements of the law. Thus, the jury were told that the question was, whether the burning was an unavoidable accident; and, after the use of

other language of very stringent application to the defendant corporation, the judge concluded his instructions upon this point with the following remarks, to wit,: " The running of an engine is a lawful business, but they must be run with ·such care as to prevent damages. So it is lawful to use gunpowder, but those who use it must take care that it does no injury to others." Now it may be that, in point of fact, the utmost care would have been nothing more than reasonable care in the special circumstances of this case; but nevertheless, if this were the fact, we think that the jury should have been left to find that it was so, as a matter of fact, after having been duly instructed in the law as we have above explained it. But under the charge which was given them, they were not left in this respect to the proper exercise of their judgments. We think, therefore, that upon this point the charge was erroneous.

On the trial of this case evidence was allowed, under exception, to pass to the jury to show that fires on the line of the road had originated from sparks escaping from the locomotives of the defendant corporation, both before and subsequently to the occurrence of the fire in question in this action. The counsel for the defendant corporation insists that this testimony is not properly admissible.

We think there are two purposes for which such testimony may be admissible. The fact that other fires have been communicated before, and especially if recently before, the occurrence of the fire in question, is a fact which should put the company on their guard and stimulate them to increased watchfulness, and therefore testimony relating to such fire might properly pass to the jury, to enable the jury to judge whether, in view of their previous occurrence, the company was, at the time of the fire in question, in the exercise of reasonable care. For this purpose, however, no testimony should pass to the jury relating to fires subsequent to the fire in question, for obviously no such fire could have put the company on their guard against the fire in question. A second purpose for which such testimony might be admissible is this, namely : to show the possibility of communicating fire by sparks from a locomotive, if any question were made upon that point, and, for this purpose, it would be immaterial whether the testimony related to fires of an earlier or later date than the fire

in question. If, however, the possibility were not questioned, and, especially, if it were admitted that the fire so originated, testimony relating to fires of a later date should be carefully excluded, as being irrelevant, and as having a tendency to excite prejudice against the company.

The application of these views to the case at bar will be manifest, and need not be more specially indicated.

Another question in the case relates to the sufficiency of the declaration. The declaration, with some variation of phraseology in the different counts, alleges, in effect, that the defendants, while using their locomotive engine and other rolling stock on their road, so carelessly and negligently managed the same that the plaintiff's cotton mill was set on fire by sparks from said locomotive engine. The point made is, that the injury complained of, if occasioned by careless management, was occasioned by the careless management, not of the engine, but of the fire in the engine. We think, however, that the same meaning is conveyed by the language used as would be conveyed by the language suggested, and that, therefore, the declaration is not insufficient on any such ground. The management of an engine consists, in part, of the management of the fire which generates the motive force of the engine.

The motion for a new trial presents several other questions of minor importance, which we do not deem it necessary to specifically consider. We grant the petitioners a new trial.

*New trial granted.*